IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GABLE STEVENS, | No. C-05-1516 MMC |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| THOMAS L. CAREY, Warden, | |
| Respondent / | |

    Before the Court is Richard Gable Steven's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent Thomas L. Carey has filed an answer and petitioner has filed a traverse. Having reviewed the papers filed in support of and in opposition to the petition, including the state court record, the Court rules as follows.

## PROCEDURAL BACKGROUND

    On January 27, 2000, the District Attorney of the County of Santa Clara filed an information against petitioner. (Clerk's Transcript ("CT") 272-86.)[1] The information charged petitioner with one count of attempted murder, one count of assault with a deadly weapon, three counts of kidnapping, three counts of first degree robbery, three counts of felony false imprisonment, three counts of communicating terrorist threats, and willful discharge of a firearm with gross negligence, along with various sentence enhancements. (CT 275-85.)

---

[1] The Clerk's Transcript is Exhibit A to Respondent's Answer.

On January 31, 2000, petitioner entered a plea of not guilty, (CT 287), and, on March 20, 2000, a plea of not guilty by reason of insanity, (CT 302). On November 16, 2000, the trial court granted the prosecutor's motion to amend the count alleging assault with a deadly weapon to a count alleging assault with a firearm, and to amend the three counts alleging first-degree robbery to three counts of second-degree robbery. (CT 383.)

On November 21, 2000, at the first phase of a bifurcated trial, the jury convicted petitioner on all counts, with the exception of the one count of attempted murder, on which the jury deadlocked. (CT 468-81.) The jury also found certain of the enhancements to be true. (CT 468-74.) Thereafter, the trial court declared a mistrial as to the attempted murder count. (CT 490.) On January 17, 2001, in the second phase of the bifurcated trial, the trial court found petitioner was legally sane at the time of the offenses.[2] (CT 499.) On March 9, 2001, the trial court dismissed the charge of attempted murder, and sentenced petitioner to a term of 50 years and 4 months in state prison. (CT 559, 561-63.)

On April 16, 2001, petitioner filed an appeal from the judgment. (CT 564.) On October 10, 2003, the California Court of Appeal struck "the convictions for kidnapping" and "the sentences imposed on those counts as well as the enhancements . . . alleged in connection with the kidnapping counts," and otherwise affirmed the judgment. (Resp't's Ex. F at 31.) On November 20, 2003, petitioner filed a petition for review with the California Supreme Court, (Resp't's Ex. G), which denied review on January 14, 2004, (Resp't's Ex. H). Thereafter, the trial court modified petitioner's sentence to a term of 42 years and 4 months. (See Petition at 2; Answer at 2.)

**FACTUAL BACKGROUND**[3]

**A. Victims' Testimony**

On July 5, 1999, Christopher Gimelli ("Gimelli"), Gregory Smutnak ("Smutnak"), and Miranda Machado ("Machado") were working at the National Shooting Club, an indoor

---

[2] Both parties waived their right to a jury trial on the issue of sanity. (CT 491.)

[3] The Factual Background is derived from the opinion of the California Court of Appeal.

2

shooting range and retail firearm store in Santa Clara.  Around noon that day, petitioner came into the store and wanted to rent a particular rifle.  Although it was unavailable, petitioner remained in the store for a couple of hours, looking at guns and talking and laughing to himself.  He finally left, but returned at around 7:30 p.m.  At that time, he rented a semi-automatic rifle, bought ammunition and targets, and went to the firing range.

Some time later, Smutnak went to the range and told petitioner the store would be closing soon.  Petitioner went into the store to make a phone call but then returned to the firing range.  A few minutes later, he burst into the store, pointed his rifle at Gimelli, Smutnak, and Machado, and repeatedly shouted, "Get your fucking hands up or I'll blow your fucking heads off."  Machado was on the phone, and petitioner told her, "Hang that fucking phone up or I'm gonna blow your head off."  All three did as they were told.

Petitioner ordered Gimelli and Smutnak to one area of the store, and threatened to kill them if they refused.  Machado started to scream.  Petitioner warned, "You better shut up or I'm gonna kill you."  He then directed her to a counter and demanded more ammunition.  Machado put some on the counter.  During this interaction with Machado, petitioner fired two shots in Machado's direction, missing her both times by less than two feet.[4]  Petitioner then demanded extra magazines for his rifle.  When Gimelli explained that they were in a locked glass case, petitioner ordered all three toward the case, again warning, "Keep your fucking hands up, or I'll blow your fucking heads off."  Petitioner then fired into the case and took the magazines himself.

After taking the magazines, petitioner ordered everyone to the front of the store.  He then made a telephone call, apparently to his mother.  After the call, he ordered all three to the back wall, and he went to the front door.  He thanked them for being so nice, put the muzzle of his rifle under his chin, and said he was going to kill himself.  Gimelli and Smutnak tried to dissuade him.  Petitioner said he was already dead, pointed the rifle at all

---

[4]The witnesses' accounts vary as to the precise moment at which petitioner fired the two shots.  Machado testified it was before he demanded the ammunition; Gimelli testified it was after he demanded the ammunition; and petitioner testified it was after Machado produced the ammunition.

3

three, warned them to stay put, and told them to watch the 10:00 o'clock news. He then left.

A few moments later, petitioner reentered the store and announced, "You're coming with me." Petitioner backed out the door and made his three victims follow him outside into the parking lot. Outside, he walked quickly to the corner, where an alley runs adjacent to the building. The three victims followed him slowly, letting the distance between them increase. At the corner, petitioner peered down the alley. When petitioner took his eyes off the victims, Gimelli drew a handgun he was carrying and shot petitioner twice. Petitioner dropped his rifle and the ammunition and ran down the alley. Petitioner was later arrested and taken into custody.

**B.  Defense Case**

Petitioner testified and admitted, or at least did not deny, all of the conduct attributed to him. According to petitioner, however, when he came into the store from the firing range, he did not know what he was going to do, and that although he thought of harming others and himself, he never intended to do so. Petitioner further testified that during the entire episode, he was confused, angry about his painful life, and not thinking clearly.

The defense was that petitioner suffered from depression and, on the day of the incident, suffered a psychotic breakdown and acted mindlessly on angry impulse. Petitioner took the position that because he was in such a mental state, he did not form the intent required for the charged offenses. As additional support for this defense, petitioner presented evidence of his troubled family background and employment history, as well as expert testimony concerning his mental disorder.

## DISCUSSION

A district court may grant a petition challenging a state conviction on the basis of a claim reviewed on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts

in light of the evidence presented in the State court proceeding." See 28 U.S.C. § 2254(d).

"[I]t is the habeas applicant's burden to show that the state court applied [clearly established federal law] to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002). "An unreasonable application of federal law is different from an incorrect application of federal law." Id. (internal quotation and citation omitted) (emphasis in original). In ruling on a habeas petition, a federal court may not "substitute[ ] its own judgment for that of the state court." Id.

Petitioner argues that he is entitled to relief on six grounds, which the Court considers in turn.

**A. Robbery Instructions**

The trial court gave the jury a standard instruction on the robbery charge, specifically, California Jury Instructions, Criminal ("CALJIC") No. 9.40. The instruction, in relevant part, stated: "Every person who takes personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear and with the specific intent permanently to deprive that person of the property, is guilty of the crime of robbery." (See CT 438.)

Petitioner argues the above-quoted instruction is deficient because it does not inform the jury that "the act of force or intimidation by which the taking is accomplished in robbery must be motivated by the intent to steal." See People v. Green, 27 Cal. 3d 1, 54 (1980) (holding "if the larcenous purpose does not arise until after the force has been used against the victim," defendant is not guilty of robbery). Petitioner argues he was prejudiced by the omission because he offered evidence that he acted out of "anger stemming from an acute depressive and psychotic episode where he did not have any goal oriented behavior," (see Pet., Attachment 1 at 7), and that the jury, had they been properly instructed, might have found his use of force was motivated by anger, and not an intent to steal. The Court of Appeal rejected petitioner's argument, finding that although no instruction expressly required the jury to find that an intent to steal motivated the use of force or fear, the instructions, taken as a whole, implicitly did. Alternatively, the Court of Appeal, citing

Chapman v. California, 386 U.S. 18 (1967), found that any deficiency in the instructions was harmless, in light of "overwhelming evidence" that petitioner's use of force and fear was motivated by a larcenous intent. (See Resp't's Ex. F at 13.)

Petitioner contends the Court of Appeal's decision was contrary to or involved an unreasonable application of federal law clearly established by the United States Supreme Court. Specifically, petitioner cites Sullivan v. Louisiana, 508 U.S. 275 (1993), and Carella v. California, 491 U.S. 263 (1989), for the proposition that omission of an element of an offense from a jury instruction constitutes constitutional error. As the Supreme Court has explained, however, "an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." See Neder v. United States, 527 U.S. 1, 9 (1999). Rather, a state appellate court must evaluate the omission from the instruction under the Chapman harmless error standard. See Chapman, 386 U.S. at 24 (holding constitutional error harmless where reviewing court is "able to declare a belief that [error] was harmless beyond a reasonable doubt"); Neder, 527 U.S. at 15-16 (holding Chapman standard applicable to claim arising from "failure to instruct on an element of the crime").

Here, the Court of Appeal, viewing the instructions as a whole, found no error. In light of the alternative basis for the Court of Appeal's decision, discussed infra, the Court does not address this finding.

Alternatively, the Court of Appeal, after correctly identifying the Chapman standard, found that "no rational jury could have found that although [petitioner] took property by force with a larcenous intent, his use of force or fear was not motivated by the same intent." (See Resp't's Ex. F at 13.) As noted, petitioner admitted, or at a minimum did not deny, the conduct attributed to him by the prosecution's witnesses. Such facts, as they pertain to the use of force, can be summarized as follows: throughout the events at issue, petitioner held his three victims captive at gunpoint and by such threat of harm, whether with or without additional displays of force, obtained their cooperation in giving him and allowing him to take valuable merchandise. Anger and the intent to obtain something of value at not cost

are not mutually exclusive states of mind. Robbers frequently use force in anger, both at their victims and at life in general. Indeed, in Green, on which petitioner relies, the California Supreme Court upheld the robbery conviction on facts reflecting a use of force motivated by both extreme anger and an intent to take property of little value. See Green, 27 Cal. 3d at 50, 74. In sum, given the undisputed evidence herein, the Court of Appeal's findings do not constitute an objectively unreasonable application of Chapman.

Accordingly, petitioner has failed to show he is entitled to habeas relief based on any deficiency in the robbery instructions.

**B. Firearm Enhancement Instructions**

The jury found petitioner personally used and discharged a firearm in the commission of certain of the crimes. (See CT 490.) Petitioner argues the trial court erred by not instructing the jury that the use and discharge enhancements required a finding of specific intent. The Court of Appeal rejected petitioner's argument, finding that "the enhancements require only the general intent to perform the proscribed act." (See Resp't's Ex. F at 15.) Petitioner argues that the Court of Appeal erred in determining that general intent, rather than a specific intent, was required.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." See Bradshaw v. Richey, — U.S. —, 126 S. Ct. 602, 604 (2005) (citing cases).

Accordingly, petitioner has failed to show he is entitled to relief based on any deficiency in the use and/or discharge enhancement instructions.

**C. Assault with a Firearm Instructions**

The trial court defined "assault" for the jury, as follows:

In order to prove assault, each of the following elements must be proved:

1. A person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person; and

//

> 2. At the time the act was committed, the person intended to use physical force upon another person or to do an act that was substantially certain to result in the application of physical force upon another person; and
>
> 3. At the time the act was committed, the person had the present ability to apply physical force to the person of another.

(See CT 432.)

In the Court of Appeal, petitioner argued the above-quoted instruction was deficient because the jury was not thereby advised that in order to convict, it had to find petitioner was "aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." See People v. Williams, 26 Cal. 4th 779, 788 (2001). Petitioner further argued he was prejudiced by such deficiency because, had the jury been properly instructed, the jury could have found that when petitioner shot toward Machado, he did not shoot with any "idea of hitting or hurting her," and that "shooting with the idea of missing, and not hitting someone, does not always establish actual knowledge by the perpetrator that the offending act by its nature would probably and directly result in physical force being applied to another." (See Resp't's Ex. C at 36.)

The Court of Appeal held that "the trial court's instruction does not expressly reflect the holding in Williams," (see Resp't's Ex. F at 19), but, citing Chapman, found any "instructional ambiguity concerning the knowledge requirement to be harmless," (see id. at 19-20). In so holding, the Court of Appeal noted that, in Williams, the California Supreme Court found that because the defendant therein had fired a "'warning shot'" at a truck, knowing the victim was in the vicinity of the truck, the "'defendant undoubtedly knew those facts establishing that his act by its nature would directly, naturally and probably result in a battery.'" (See id. at 19 (quoting Williams, 26 Cal. 4th at 790).) The Court of Appeal characterized the instant case as being "essentially the same" because petitioner had fired warning shots in Machado's direction, knowing her location at the time he did so. (See id. at 20.) The Court of Appeal also noted that "had Machado moved suddenly just before defendant fired the first or second time, she could well have been shot and killed." (See

8

id.)[5]  In light of such evidence, the Court of Appeal concluded the jury could not have found petitioner lacked the requisite knowledge.

Petitioner has failed to show the Court of Appeal's finding is contrary to, or involved an unreasonable application of, clearly established federal law.

Accordingly, petitioner has not shown he is entitled to relief based on any deficiency in the assault instructions.

**D.  Discharge of Firearm With Gross Negligence Instructions**

The trial court instructed the jury that the crime of discharging a firearm with gross negligence has three elements:  (1) "A person willfully and unlawfully discharged a firearm"; (2) "[t]he person who discharged the firearm did so in a grossly negligent manner; and (3) "[t]he discharge of the firearm was done in a manner which could result in injury and death to a person."  (See CT 436.)  Petitioner argues the instruction was deficient because the trial court did not define the phrase "gross negligence."  Petitioner further argues the trial court erred by omitting the crime from the instructions requiring the jury to find a concurrence of act and intent.

As to petitioner's first argument, the Court of Appeal agreed with petitioner that the trial court erred by failing to define "gross negligence"; the Court of Appeal further held the phrase should have been defined as "negligent acts which are aggravated, reckless, or flagrant and which are such a departure from the conduct of an ordinarily prudent, careful person under the same circumstances as to be contrary to a proper regard for danger to human life or to constitute indifference to the consequences of those acts."  (See Resp't's Ex. F at 21 (quoting CALJIC 3.36).)  Citing Chapman, the Court of Appeal found the error harmless, for the reason that firing a gun "inherently carries potentially imminent deadly consequences," (see id. at 22), particularly under the circumstances presented, namely, petitioner's twice firing a rifle in Machado's direction, missing her, in each instance, by a relatively short distance.  The Court of Appeal also observed that the jury was instructed

---

[5]Contrary to petitioner's argument, a defendant "need not be subjectively aware of the risk that a battery might occur."  See Williams, 26 Cal. 4th at 788.

that in order to convict, it had to find petitioner discharged the weapon "in a manner which could result in injury or death," (see CT 436); the Court of Appeal found such instruction "substantially compensated for the lack of an express definition of gross negligence," (see Resp't's Ex. F. at 22-23).

Turning to petitioner's second argument, the Court of Appeal, finding the crime required evidence of general intent,[6] held that "technically" the trial court should have included it in CALJIC 3.30, the pattern instruction by which the jury was advised as to the required concurrence of act and general intent. (See id. at 23-24.) In particular, CALJIC 3.30 states that in the commission of the crime, "there must exist a union or joint operation of act or conduct and general criminal intent." (See CT 422.) The Court of Appeal found the error harmless, however, because petitioner effectively conceded he acted with general intent, by admitting he willfully fired his rifle when he shot toward Machado. See Resp't's Ex. B at 736 ("Q. And when you shot the two bullets in Miranda Machado's direction, you intended to shoot those bullets, right?  A. Yeah"); see also CALJIC 3.30 ("When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful.").

Again, the Court of Appeal's finding cannot be said to be either contrary to or an unreasonable application of federal law.

Accordingly, petitioner has not shown he is entitled to relief based on any deficiency in the instructions with respect to the crime of discharge of a firearm with gross negligence.

**E. Sufficiency of Evidence of Discharge of Firearm with Gross Negligence**

Petitioner argues there was insufficient evidence to support his conviction for the crime of discharge of a firearm with gross negligence. Specifically, petitioner argues there was no substantial evidence his conduct could have resulted in an injury or death because he was skilled at using firearms and he fired in such a manner that the bullets missed

---

[6]To the extent petitioner argues he is entitled to habeas relief because the Court of Appeal erred in finding specific intent is not a required element, petitioner, for the reasons stated above, is not entitled to habeas relief. See Bradshaw, 126 S. Ct. at 604.

Machado's head by, in one instance, 14 inches, and in the other instance, 22 inches. (See R.T. 408-10.) The Court of Appeal rejected petitioner's argument, again noting that "if . . . Machado had suddenly moved when [petitioner] pointed his rifle in her direction, she could well have been shot." (See Resp't's Ex. F at 24.) Under such circumstances, the Court of Appeal found, substantial evidence supported the jury's determination that petitioner's "discharge of the firearm was done in a manner which could result in injury and death to a person." (See CT 436.)

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court held that on habeas review, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See id. at 319 (emphasis in original).

Here, assuming the jury accepted petitioner's testimony that he did not intend to hit Machado when he fired the rifle, a finding to that effect would not be inconsistent with a finding of gross negligence. As noted, at least one of the shots came very close and petitioner had no guarantee Machado would remain absolutely motionless. Moreover, the jury was not required to accept petitioner's evaluation of his marksmanship, particularly given the exceptionally tense situation in which he was acting.

Accordingly, petitioner has not shown he is entitled to relief based on the sufficiency of the evidence supporting his conviction for discharge of a firearm with gross negligence.

**F. False Imprisonment Instructions**

The trial court instructed the jury that the crime of false imprisonment requires evidence that the defendant "intentionally and unlawfully restrained, confined, or detained another person, compelling him [or] her to stay or go somewhere," that the "other person did not consent to the restraint, confinement, or detention," and that the "restraint, confinement, or detention was accomplished by violence or menace." (See CT 444.) Petitioner argues that the trial court erred by not advising the jury of an additional element, specifically, that "the act of violence, menace, fraud, or deceit by which the false imprisonment is effected must be motivated by an intent to unlawfully violate the personal

liberty of another." (See Pet., Attachment 6 at 1.) Petitioner takes the position, as he did in the Court of Appeal, that such "specific intent" is an element of false imprisonment. (See Resp't's Ex. E at 27-28.) The Court of Appeal rejected petitioner's argument, finding the crime of false imprisonment does not require evidence of specific intent.

As discussed above, a district court, on habeas review, is bound by a state court's determination as to the elements comprising a state law crime. See Bradshaw, 126 S. Ct. at 604.

Accordingly, petitioner has failed to show he is entitled to habeas relief based on the Court of Appeals' determination that specific intent is not a required element of the crime of false imprisonment.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is hereby DENIED.

The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  January 6, 2006

MAXINE M. CHESNEY
United States District Judge